(22 App. Div. 480.)

# POWERS v. CREEM.

(Supreme Court, Appellate Division, Second Department.    November 30, 1897.)

NEGLIGENCE OF STREET CONTRACTOR—EVIDENCE.

> Defendant, a contractor, had opened a sewer trench in a city street, and inserted crossbeams for the purpose of bracing long timbers within the trench.   One of these braces, about 10 inches wide, occupied nearly the same place previously occupied by the regular crosswalk.   At this point the trench was 12 or 14 feet wide.   Plaintiff,—a boy about eight years old,—in attempting to cross over on this beam, became dizzy, and fell into the trench, and was injured.   He could have crossed the street in perfect safety a short distance to the right or left, and there was no evidence that defendant had provided the beam for the use of the public.   *Held*, that there was not sufficient evidence of defendant's negligence to justify submitting the case to the jury.

Appeal from Kings county court.

Action by Joseph Powers, Jr., an infant, by his guardian ad litem, Joseph Powers, against Daniel J. Creem.   From a judgment entered on a verdict in favor of plaintiff, and from an order denying a new trial, defendant appeals.   Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Perry D. Trafford, for appellant.

Nathaniel H. Clement, for respondent.

WILLARD BARTLETT, J.   There was not sufficient evidence of any negligence on the part of the defendant in this case to justify its submission to the jury.   The accident which gave rise to the suit occurred to the plaintiff, a boy then about eight years old, on the 3d day of December, 1895, while he was endeavoring to cross a sewer trench which the defendant had opened in Hancock street, under a contract with the city of Brooklyn.   At the intersection of Hancock street with Howard avenue, a plank or crossbeam about 10 inches in width extended across the trench from side to side, occupying very nearly the same place that the westerly crosswalk parallel with Howard avenue must have occupied before the excavation was made.   This plank or crossbeam was one of a series of pieces of timber, of the same general character and dimensions, which were placed across the trench, as the work of excavation proceeded, for the purpose of keeping in position the long timbers which were laid along the top of the interior of the ditch, on both sides of it.   In other words, the plank which the plaintiff endeavored to use as a crossing was one of a number of braces which served in part to hold up the shoring of the trench.   The distance between these braces is variously stated at from 14 to 18 feet.   At the point where the accident occurred the width of the trench was 12 or 14 feet.   The plaintiff, who was on his way home from school at the dinner hour, and had frequently crossed the excavation on the beam at Howard avenue before, proceeded on it in safety until he reached the middle, when he became dizzy and fell into the trench, sustaining injuries for which the jury have awarded him the sum of $1,300 damages.   The

theory of the plaintiff's case, as stated in the complaint, and the theory upon which it was tried and submitted to the jury, was that the plank or beam from which the boy fell had been placed by the defendant where it was in order that it might be used by pedestrians and persons crossing over Hancock street, from one side to the other, for the purposes of a crosswalk; and the alleged negligence consisted of the failure to furnish so narrow a passageway, thus provided for public travel, with suitable railings, or with guards of some kind, to prevent persons from falling off. Under such a complaint, it was necessary for the plaintiff to show that the defendant designed the beam for use as a crosswalk, and thus practically extended an invitation to go upon it to the plaintiff, and any others of the public who had occasion to cross Hancock street at the corner of Howard avenue, as long as the excavation remained open, and the beam remained in the same position at that point. I cannot find anything in the record, however, to warrant the inference that the plank was provided for the use of the public as a footway, or in any other respect. The photograph which was put in evidence to illustrate the general appearance of things in the street at the time of the accident shows in the clearest possible manner that these planks or crossbeams were part of the structure erected by the defendant over, in, and about the trench which he had undertaken to open in accordance with his contract with the city of Brooklyn for the construction of a sewer in that locality. They were plainly nothing but bracebeams, as they were denominated by one of the witnesses for the plaintiff. It is true that the plaintiff himself spoke of the beam from which he fell as being a beam there for him to walk on; but, as already intimated, the nature of the structure of which it was a part did not warrant the conclusion by any one that it was intended for use as a bridge over the sewer trench. The same observation applies to the testimony of a witness named William S. Reed, who swore, in answer to a very leading question on his direct examination, that "the provision for crossing there at Howard avenue and Hancock street" was the same the night after the accident as it was before, and that it consisted of a single plank. All that this evidence amounts to is an assertion that the same plank was there, but it affords no support to the inference that it was a "provision for crossing." It was a provision for bracing, and nothing else. If, under such circumstances, any one chose to use it, instead of going a short distance to the right or left, where Hancock street could have been crossed in absolute safety, he took the risk of his enterprise. Indeed, that risk does not appear to have been very great, so far as the plaintiff himself was concerned; for he testified that the ditch had been across Howard avenue for about two weeks, and that during that period he crossed the trench on the beam every day. When he fell into the ditch, on the last day, it was not by reason of any weakness in the timber, or insecurity in its fastening, but solely because he was overcome by dizziness. Such is his own story. There was evidence in behalf of the defendant that there was a substantial bridge across the trench at the east crosswalk of Howard avenue; but, as some witnesses for

the plaintiff denied the existence of any bridge there at the time of the accident, the jury were not bound to accept the defendant's version in respect to this matter. The proof is undisputed, nevertheless, that the plaintiff could have found a perfectly safe crossing over Hancock street by going around the head of the trench, which had not progressed very far beyond Howard avenue, or by going a block in the other direction, to Ralph avenue, through which he passed daily on his way from home to school, and which was equally accessible as a way back. With these facilities for safe travel between the plaintiff's school and his father's house, a jury should not be allowed to mulct the defendant in damages simply because this bright and adventurous boy saw fit to test his agility in attempting to cross by a way obviously not intended as a crossing, and which neither he nor anybody else had been invited to use for the purpose. See Brennan v. Mayor, etc., of New York (Sup.) 22 N. Y. Supp. 304.

I think the judgment should be reversed. All concur.